THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CURTIS SCOTT WILLIAMS, | **MEMORANDUM DECISION & ORDER DISMISSING COMPLAINT** |
| Plaintiff, | |
| v. | Case No. 1:22-CV-175-TS |
| ZACHARY CAMPBELL, *et al.*, | District Judge Ted Stewart |
| Defendants. | |

Plaintiff Curtis Scott Williams filed a *pro se* verified amended complaint ("Complaint") under 42 U.S.C.S. § 1983 (2025) alleging that Defendants violated his constitutional rights by failing to protect him from exposure to COVID-19 and by deliberate indifference to his serious medical needs. Defendants move to dismiss the Complaint, arguing that it fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiff, now represented by counsel, opposes the Motion to Dismiss.

Having carefully considered the parties' filings, the court finds that Plaintiff fails to state a claim upon which relief may be granted. Plaintiff lacks standing to assert claims based on other inmates' exposure to COVID. Section 1983 does not support Plaintiff's theory of supervisor liability against Dr. Campbell in Counts One and Four. Count Two fails to state a claim that Nurse Stacey (LNU)[1] acted with reckless indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment by failing to properly diagnose and treat Plaintiff's COVID symptoms. Count Three also fails to state a claim that Defendants acted with reckless

---

[1] Defendants suggest, based on information and belief, that Plaintiff refers to Nurse Stacey Roquemore. Nevertheless, she will be referred to as Nurse Stacey herein, as she was in the Complaint.

indifference to Plaintiff's serious medical needs. For the reasons below, the Amended Complaint is DISMISSED in its entirety.

## BACKGROUND

For the purposes of this motion to dismiss, the court accepts Plaintiff's well-pleaded factual allegations as true. *See Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). Plaintiff makes the following allegations:

Plaintiff suffers from chronic obstructive pulmonary disorder ("COPD") which causes inflammation in the lungs and makes him especially vulnerable to respiratory ailments. Plaintiff alleges that he and other inmates were infected with COVID-19 in December 2022 as a result of Weber County Jail officials' failure to comply with the jail's quarantine policy after another inmate tested positive.

Plaintiff alleges that at the time he was infected, the jail had a policy that any inmate who tested positive for COVID would be quarantined for seven days, and could only be released back into the general population after a negative test. However, Plaintiff alleges that an inmate who had tested positive for COVID was released into the general population after only two days of isolation and without a negative test. That inmate told Plaintiff that he was able to circumvent the normal seven-day isolation period by falsely claiming suicidality. Then, after just two days in the suicide watch unit, the inmate was released back into the general population despite his COVID status. Shortly after the inmate's return to the general population "many persons," including Plaintiff, contracted COVID.

On December 14, 2020, Plaintiff began experiencing flu-like symptoms including fever, chills, runny nose and breathing problems. According to Plaintiff, while restricted breathing is consistent with his history of COPD exacerbations, the other symptoms he experienced were not.

2

After Plaintiff exhausted his supply of inhalers, a deputy escorted him to the infirmary. When Nurse Stacey attempted to check Plaintiff's temperature, the thermometer failed to provide a reading. Rather than making a second attempt to obtain a reading, she returned the thermometer to the cart and proceeded to ask Plaintiff about his symptoms. Plaintiff described his symptoms including the fact that they were inconsistent with COPD. Plaintiff's oxygen saturation was measured at 87 percent, which is far below normal. Plaintiff was not given a COVID test. Nevertheless, the nurse insisted that she was very familiar with COPD and proceeded to administer a nebulized steroid treatment to treat inflammation in Plaintiff's lungs. After the nebulizer, Plaintiff was sent back to his housing unit rather than being quarantined, as he would have been if he had been diagnosed with a COVID infection. The walk back to the unit left him so short of breath that he returned to the infirmary a few minutes later.

When Plaintiff arrived back at the infirmary, his oxygen saturation had dropped to 84 percent and Nurse Stacey recorded his temperature of 100 degrees. She then contacted Nurse Practitioner Roth, who advised her to administer a second nebulizer treatment. Again, no COVID test was administered. When it became apparent that the nebulizer treatments were ineffective, Nurse Roth advised that Plaintiff required immediate hospitalization. Around 11:00 pm, approximately two hours after Plaintiff originally reported to the infirmary, an ambulance transported him to Ogden Regional Medical Center.

Hospital staff administered a COVID test and determined that Plaintiff had COVID-19. The emergency room doctor told Plaintiff that they could not administer a nebulizer treatment because of the risk of spreading his COVID infection. Further, she told him that based on his symptoms and the pandemic in general, COVID should have been jail medical staff's primary concern. The hospital notified the jail of the contamination. The jail implemented widespread

COVID protocols including quarantining Plaintiff's cell block and instructing all staff to use personal protective gear.

Plaintiff returned to the jail when his symptoms stabilized. He was given supplemental oxygen and quarantined for ten days. Plaintiff alleges that this course of treatment deviated from the course recommended by the staff at the Ogden Regional Medical Center. During this period, Plaintiff was unable to communicate with his family to reassure them about his health. On December 26, 2022, Plaintiff and another inmate were returned to the general population without a COVID test to confirm that they were no longer positive. Nine months later, Plaintiff continues to experience extreme shortness of breath and other "long COVID" symptoms, including loss of his sense of smell and diminished sense of taste.

Plaintiff makes no allegations that Defendant Zachary Campbell was directly involved in his diagnosis or treatment of Plaintiff's COVID infection. Rather, Plaintiff alleges that Defendant Campbell is liable as a function of his responsibility to train medical staff and supervise the on-duty staff.

## CLAIMS

Plaintiff asserts four claims related to his COVID infection while incarcerated at Weber County Jail. Count One alleges that Zachary Campbell violated the Eighth Amendment, including Plaintiff's right to equal protection and the prohibition on cruel and unusual punishment, by failing to adequately train medical staff to properly implement COVID-19 protocols. Count Two alleges that Nurse Stacey (LNU)[2] violated the Eighth Amendment prohibition on cruel and unusual punishment when she acted with reckless indifference to Plaintiff's serious medical needs by failing to properly diagnose and treat Plaintiff's COVID-19

---

[2] Defendants suggest, based on information and belief, that Plaintiff refers to Nurse Stacey Roquemore. Nevertheless, she will be referred to as Nurse Stacey herein, as she was in the Verified Second Amended Complaint.

4

symptoms. Count Three alleges that Defendants violated the Eighth Amendment by failing to contain the spread of COVID-19 within Weber County Jail by failing to properly treat Plaintiff's infection. And, Count Four alleges that Defendants violated the Eighth Amendment by failing to properly treat Plaintiff's COVID infection after he returned to the jail from Ogden Regional Medical Center.

## MOTION TO DISMISS

Defendants move to dismiss plaintiff's claims under Rule 12(b). Defendants argue that

- Plaintiff fails to state an equal protection claim because he fails to allege disparate treatment and because he fails to allege racially discriminatory intent;

- Plaintiff fails to state a claim under the Eighth Amendment because the rights of a pretrial detainee are governed by the Fifth Amendment;

- Count One fails to state a claim against Defendant Campbell because the Complaint lacks substantive allegations of deficient training or Defendant Campbell's knowledge of any pattern of violations;

- Plaintiff lacks standing to assert claims related to other people being exposed to COVID by Defendants' allegedly negligent treatment of Plaintiff's infection;

- Plaintiff fails to allege that Defendants subjectively disregarded an excessive risk to Plaintiff's health as necessary to support a claim for deliberate indifference; and

- Plaintiff fails to allege facts necessary to state a claim based on supervisor liability against Defendant Campbell;

## LEGAL STANDARDS

### Motion to Dismiss

A motion to dismiss may be granted when the petition has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kikumura v. Osagie*, 461 F.3d 1269, 1291-1292 (10th Cir. 2006) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1223 (10th Cir. 1999)). To survive a motion to dismiss, a petition must present factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id.* at 558.

A court evaluating a Rule 12(b)(6) motion to dismiss may consider the petition as well as any documents attached to it as exhibits. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). A *pro se* petition must be broadly construed under this standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories,

his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d at 1110; *see Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (holding courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). Courts "should dismiss claims which are supported only by vague and conclusory allegations." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### Deliberate Indifference

Section 1983 is a vehicle for "an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (cleaned up). The Eighth Amendment safeguards

inmates from deliberate indifference to obvious and substantial risks of serious harm. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A claim for deliberate indifference requires both an objective and subjective component. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "The objective component is met if the deprivation is 'sufficiently serious.'" *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component is met where the defendant is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d at 1230. "Since the subjective component of deliberate indifference is based on the prison officials' state of mind, it is 'a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 842).

"[A]n inadvertent failure to provide adequate medical care" does not arise to the level of deliberate indifference. *Estelle v. Gamble*, 429 U.S. at 105-06. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court precedent] be condemned as the infliction of punishment," *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The Tenth Circuit has held that "misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d at 1234. "Similarly, 'a complaint that a physician has been negligent in diagnosing or treating a medical condition' does not violate the Eighth Amendment." *Est. of Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (quoting *Estelle v. Gamble*, 429 U.S. at 106).

8

## DISCUSSION

## Equal protection

Plaintiff fails to set forth an equal protection claim. Count One alleges an equal protection violation based on Defendants' alleged failure to protect Plaintiff from COVID. A plaintiff must allege sufficient facts, taken as true to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An equal protection claim requires a plaintiff to allege that there were others who were similarly situated in every material respect. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). The plaintiff must also allege that he was harmed by being treated differently from those similarly situated peers. *Id*.

Plaintiff inverts both requirements. Plaintiff fails to allege that there were any similarly situated inmates and fails to allege any differential treatment. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The core of Plaintiff's Equal Protection claim seems to be that prison officials failed to provide extra protection because of unique vulnerability to COVID. According to the Complaint, Plaintiff's COPD renders him uniquely vulnerable to respiratory infections like COVID. Further, Plaintiff alleges that he and other inmates contracted COVID when an infected inmate was released into the general prison population. The closest Plaintiff comes to identifying a similarly situated class that experienced differential treatment is the argument that "[u]nder equal protection the plaintiff should enjoy a safe environment, with adequate medical attention/care, as a pretrial detainee." ECF No. 23-2, at 10. Liberally construed, Plaintiff may have been attempting to argue that he was similarly situated to pretrial detainees who apparently enjoyed adequate medical care. However, Plaintiff has not alleged any facts pertaining to medical care provided to pretrial detainees. Nor has Plaintiff alleged sufficient facts to conclude

that pretrial detainees were protected from exposure to COVID-19 when the infected inmate was released back into the general population. Plaintiff also fails to allege that other inmates or detainees received superior medical care after contracting COVID symptoms. Plaintiff's equal protection claims must be dismissed because he fails to allege facts sufficient to state a plausible equal protection claim. *See Hall v. Bellmon*, 935 F.2d at 1110 (finding the generous construction afforded to *pro se* litigants' allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

### Standing

Plaintiff lacks standing to assert claims related to other people being exposed to COVID-19 by Defendants' allegedly negligent treatment of Plaintiff's infection. Throughout Plaintiff's complaint, but predominately in Count Three, Plaintiff alleges that Defendants failed to implement proper protocols to prevent the spread of COVID within the jail. For example, Plaintiff complains that the nebulizer treatment he was given when he had an active COVID-19 infection contaminated the infirmary, exposing inmates and medical staff. ECF No. 23-2 at 16 ("[T]o nebulize the COVID virus and contaminate others is a demonstration of gross negligence."). To the extent that Plaintiff attempts to assert claims related to jail staff's failure to protect other individuals from exposure to COVID infection, Plaintiff lacks standing to pursue those claims, and they are dismissed. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

### Doctor Campbell

Plaintiff alleges that Dr. Campbell failed to implement constitutionally adequate procedures to contain the spread of COVID-19 within the jail. Plaintiff alleges that he was infected by another inmate who evaded the jail's seven-day quarantine requirements by falsely claiming to be suicidal. According to Plaintiff, the inmate told him that after just two days in

suicide watch, medical staff released him back into the population without retesting for COVID-

19. Plaintiff alleges

> that under no circumstances should have inmate Merritt been
> allowed back into a post-quarantine, negative COVID environment
> without being tested prior to the 7 day quarantine requirement. Nor
> under any conditions should any policy and procedure or COVID
> prevention techniques been superceeded [sic] at any time.
> Defendant Zachary Campbell alone bore the responsibility to insure
> [sic] that all staff members were properly trained and understood the
> mandates of COVID prevention and protection.

ECF No. 23-2, at 10. Count One attempts to hold Dr. Campbell responsible for Plaintiff's

exposure to COVID-19 because jail staff released an infected inmate into the general population

prior to completion of the quarantine period. Count Three "assigns responsibility according to

the 'chain of command' to Zachary Campbell as the medical coordinator to nurse practitioner

who was directing the direction of treatment as on call medical staff to on duty staff nurse Stacey

LNU." ECF No. 23-2, at 17.

   The closest Plaintiff comes to alleging that Dr. Campbell was personally involved in his

diagnosis or treatment is a conclusory statement in Count Four: "On December 14th at around

11:00 pm the plaintiff was taken by ambulance to the Ogden Regional Medical Center due to a

diagnosis by Weber County Jail medical providers/defendants Zachary Campbell, Chelsey Roth

and Stacey (Last Name unknown) LNU as a COPD exaserbation [sic] despite COVID 19

symptoms." ECF No. 23-2, at 19. Plaintiff provides no details about how Dr. Campbell

participated in the diagnosis. Elsewhere in the Complaint, Plaintiff repeatedly suggests that Dr.

Campbell is named as a defendant as a function of his role as a supervisor. *See, e.g.,* ECF No.

23-2, at 10 ("Defendant Zachary Campbell alone bore the responsibility to insure [sic] that all

staff members were properly trained and understood the mandates of COVID prevention and

protection."). The sections of the complaint that describe the diagnosis and treatment describe

Plaintiff's interactions with Nurse Stacey, who eventually called Nurse Roth. Plaintiff provides

no indication that Dr. Campbell personally oversaw the diagnosis, nor explains why Nurse

Stacey would have deferred to a nurse practitioner if a doctor was personally involved. Nor does

Plaintiff allege that Dr. Campbell was personally involved in the decision to quarantine the

infected inmate or to release him into the general population. Nor does Plaintiff allege that Dr.

Campbell participated in Plaintiff's treatment and isolation once he returned to the jail.

Defendants move to dismiss the claims, arguing that Plaintiff has failed to allege an

affirmative link between Dr. Campbell and the alleged constitutional violations. "Section 1983

does not authorize liability under a theory of respondeat superior." *Schneider v. City of Grand

Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d

1152, 1164 (10th Cir. 2011)). "The plaintiff therefore must show an affirmative link between the

supervisor and the constitutional violation. This requires, for example, more than a supervisor's

mere knowledge of his subordinate's' conduct." *Id.* (cleaned up) (citing *Iqbal*, 556 U.S. at 677).

An affirmative link is established by allegations showing (1) the supervisor's personal

involvement; (2) sufficient causal connection; and (3) a culpable state of mind. "*Dodds v.

Richardson*, 614 F.3d at 1195.

Plaintiff's Opposition to the Motion to Dismiss neglects to address the affirmative link

requirement for a supervisor to be held liable for an alleged constitutional violation. However,

"even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the

district court must still examine the allegations in the plaintiff's complaint and determine whether

the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d

1174, 1178 (10th Cir. 2003). Having reviewed the Complaint, the court finds no allegations of a

personal involvement, a causal connection, or a culpable state of mind sufficient to state a

constitutional claim against Dr. Campbell. All claims against Dr. Campbell must therefore be dismissed.

### Nurse Stacey

Plaintiff alleges Nurse Stacey acted with deliberate indifference to his serious medical needs by failing to properly diagnose and treat his COVID symptoms. Plaintiff alleges that Nurse Stacey "recklessly failed to act with reasonable care to mitigate the risk that COVID posed by first not immediately taking plaintiff's temperature to indicate the 101º fever plaintiff had and the subsequent COVID test that should have been given." ECF No. 23-2, at 16. For the purposes of this motion to dismiss, Plaintiff's well pleaded facts are taken as true, as opposed to conclusory allegations. *See Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

The following facts are taken from the factual allegations in the Complaint as well as reasonable inferences that may be drawn from the well pleaded facts. Nurse Stacey was the primary medical provider who attended to Plaintiff on December 14, 2022, the day he first experienced COVID symptoms. Plaintiff alleges that he reported to the infirmary at approximately 9:00 pm. According to Plaintiff, he told Nurse Stacey that he was experiencing "hot/cold chills, body aches, runny nose, loss of smell and now depravation of lung function. ECF No. 23-2, at 15. According to Plaintiff, Nurse Stacey failed to obtain a reading for his temperature but recorded low oxygen saturation in his blood (87 percent). Further, Plaintiff reported that he suspected he had been exposed to COVID and explained to her that he had been hospitalized for his COPD more than twenty times and his symptoms were distinguishable from those incidents. Rather than administer a COVID test, Nurse Stacey told Plaintiff that she was familiar with COPD because her father had died from the condition and proceeded to administer

a nebulizer treatment which lasted approximately ten to fifteen minutes. *Id*. After the nebulizer, Nurse Stacey took Plaintiff's temperature (101º) and sent him back to his housing area. *Id*. at 16.

At around 10:30 pm, Plaintiff returned to the infirmary because his respiratory problems had not abated. Plaintiff's oxygen saturation had fallen to 84 percent and his temperature had dropped to 100º. *Id*. at 21. Nurse Stacey called Nurse Roth, who advised a second nebulizer treatment. Nurse Stacey administered the second treatment, but Plaintiff continued to experience symptoms. Nurse Stacey then consulted Nurse Roth again, who advised that Plaintiff be taken to the hospital by ambulance. *Id*. Plaintiff was transported to the hospital approximately two hours after he had initially reported to the infirmary even though no COVID test had ever been administered by jail staff. Plaintiff was diagnosed with COVID-19 in the emergency room.

Plaintiff characterizes his claims against Nurse Stacey as follows:

> Plaintiff was exposed to extensive malpractice in that the COVID test should have been given at the outset of this situation. All of my symptoms were idicative [sic] of COVID thereby outlining the method of treatment. Staff nurse Stacey (LNU) recklessly failed to act with reasonable care to mitigate the risk that COVID posed by first not immediately taking plaintiff's temprature [sic] to indicate the 101º fever plaintiff had and the subsequent COVID tests that should have been given. Also to nebulize the COVID virus and contaminate others is a demonstration of gross negligence.

(ECF No. 23-2,at 16.)

Defendants argue that Plaintiff fails to allege facts necessary to establish the subjective component of a deliberate indifference claim. To meet the subjective component, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "[A]n inadvertent failure to provide adequate medical care" does not rise to the level of deliberate indifference. *Estelle v. Gamble*, 429 U.S. at 105-06. "[A]n official's failure to alleviate a significant risk that he should

14

have perceived but did not, while no cause for commendation, cannot under [Supreme Court precedent] be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The Tenth Circuit has held that "misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d at 1234. "Similarly, 'a complaint that a physician has been negligent in diagnosing or treating a medical condition' does not violate the Eighth Amendment." *Est. of Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (quoting *Estelle v. Gamble*, 429 U.S. at 106).

Defendants argue that even if Nurse Stacey misdiagnosed and treated Plaintiff's respiratory symptoms as an exacerbation of his COPD, rather than a COVID-19 infection, a misdiagnosis does not amount to cruel and unusual punishment. Motion to Dismiss. ECF No. 43, at 17 (quoting *Self v. Crum*, 439 F.3d at 1234 ("[M]isdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under [Tenth Circuit] case law to satisfy the subjective component of a deliberate indifference claim")).

In opposition to the Motion to Dismiss, Plaintiff argues that

> It is undisputed that Mr. Williams contacted medical staff and informed them of his COPD as well as his fear of COVID. It is also undisputed that the medical staff ignored his request, and clearly [sic] indifferent to his critical medical needs.

ECF No. 46, at 7. Plaintiff offers citation to cases for general propositions that deliberate indifference to serious medical needs amounts to a violation of the Eighth Amendment. For example, Plaintiff quotes *Hunt v Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) for the proposition that

> Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody.

> This is true whether the indifference is manifested by prison doctors responding to the prisoner's needs or by guards' intentionally delaying or denying access to medical care that has been prescribed. *See Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976).

ECF No. 46, at 7. However, Plaintiff offers no analysis of the subjective component of a deliberate indifference claim.

Plaintiff has not alleged facts to support the inference that Nurse Stacey treated Plaintiff's COVID infection with deliberate indifference. According to Plaintiff's allegations, despite Plaintiff informing Nurse Stacey that his symptoms, including fever, body aches, and loss of smell, Nurse Stacey (wrongly) insisted that he was suffering an exacerbation of COPD. Nurse Stacey may have (negligently) allowed her medical judgment to be clouded by her father's experience with COPD. Nurse Stacey may have been negligent in not taking Plaintiff's temperature prior to administering a nebulizer. She may have been negligent in failing to administer a COVID test to an inmate experiencing respiratory symptoms in December 2022, while the COVID pandemic persisted. But, "[n]egligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self v. Crum*, 439 F.3d at 1233 (internal citations omitted). In order to state a constitutional claim for deliberate indifference, Plaintiff must allege facts supporting the conclusion that the defendant subjectively made the inference that Plaintiff was suffering serious medical risk and consciously disregarded that subjective understanding. *Id*. at 1230.

"Since the subjective component of deliberate indifference is based on the prison officials' state of mind, it is 'a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 842). The subjective component of deliberate

indifference may be inferred where the serious medical need is obvious. *Self v. Crum*, 439 F.3d at 1231.

But, Plaintiff's allegations fall below the standards the Tenth Circuit has required to meet the subjective component for deliberate indifference. For example, *Sealock v. Colorado* involved multiple defendants responsible for the treatment of an inmate who experienced a heart attack. The Tenth Circuit ruled that an inmate who alleged that a guard refused to drive the inmate to the hospital because it was snowing outside had satisfied the pleading requirements for the subjective deliberate indifference. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The inmate alleged that the guard had been told of the possibility the inmate had experienced a heart attack and had observed the inmate's other symptoms but told the inmate not to die on his shift. *Id*.

In contrast, in the same case, the court found that a nurse (Renee Huber) who was told of the inmate's symptoms the next morning but concluded that he had the flu and that he would have to wait two hours for further treatment had not acted with deliberate indifference. "At worst she misdiagnosed appellant and failed to pass on information to [the physician's assistant] about appellant's chest pain. Appellant has failed to show that she was deliberately indifferent to his serious medical needs." *Id*.

Similar to the plaintiff in *Sealock*, Plaintiff experienced a serious medical need, which has resulted in lasting consequences. Neither plaintiff alleged that the lasting consequences could have been avoided by more timely treatment. Also, similar to Nurse Huber in *Sealock*, Nurse Stacey might have done more with the information she had at her disposal to diagnose and treat Plaintiff. However, unlike Nurse Huber, Nurse Stacey arranged for Plaintiff to obtain a proper diagnosis and medical care less than two hours after reporting his symptoms (the plaintiff in

*Sealock* waited two days after suffering a heart attack for treatment, during which time he reported severe pain and suffering).

Nurse Stacey administered timely treatment for Plaintiff's low oxygen saturation which she interpreted to be a symptom of his COPD. When this treatment proved unsuccessful, she consulted with Nurse Roth, who recommended a second nebulizer. Nurse Stacey administered that treatment and again deferred to Nurse Roth when the nebulizers proved unsuccessful. Plaintiff was sent to the hospital shortly thereafter. On these allegations, the court will not infer that Nurse Stacey subjected Plaintiff to cruel and unusual punishment through her deliberate indifference to his serious medical needs.

### Nurse Roth

Plaintiff fails to allege what actions Nurse Roth took to inflict cruel and unusual punishment. Defendants move to dismiss the claims against Nurse Roth, arguing that Plaintiff failed to allege facts necessary to establish a claim for deliberate indifference to serious medical needs. Construed liberally, Plaintiff's claim against Nurse Roth is rooted in her failure to order a COVID test when he returned to the infirmary after a previous nebulizer treatment was unsuccessful. *See* ECF No. 23-2, at 21. The Complaint alleges that when Nurse Roth learned that Plaintiff was experiencing trouble breathing, low oxygen saturation, and a fever, she advised Nurse Stacey to administer a (second) nebulizer treatment and then ordered Plaintiff to be taken to the hospital by ambulance. Nurse Roth never ordered a COVID test.

The Complaint alleges that Defendants' failure to properly diagnose and treat his COVID infection contaminated the jail but does not identify any harms to Plaintiff caused by the delay. Plaintiff does not specify how much time transpired between the time Nurse Stacey consulted Nurse Roth, and Nurse Roth's decision to have him transported to the hospital. Plaintiff alleges

only that "once it became obvious that the nebulized treatments were not providing any relief it was determined by the nurse practitioner Chelsey Roth that I be transported by ambulance." *Id*. at 22. Plaintiff does not specify how long it took before Nurse Roth determined that the second nebulizer was ineffective, but elsewhere in the Complaint, Plaintiff alleges that his first nebulizer treatment lasted between ten and fifteen minutes. *Id*. at 15.

Plaintiff alleges that Ambulance staff administered epinephrine, which improved his breathing and then magnesium which they told him was "only used as a last resort." *Id*. Plaintiff tested positive for COVID-19 upon arrival at the emergency room.

Plaintiff fails to allege facts sufficient to meet the objective component of a deliberate indifference claim against Nurse Roth. The Tenth Circuit discussed the standards for the objective component in the context of a motion to dismiss in *Kikumura v. Osagie*, 461 F.3d 1269 (10th Cir. 2006) (holding that plaintiff pleaded facts sufficient to satisfy the objective component where he alleged "torturous" pain and significant harm resulting while he waited more than twelve hours for treatment).

> When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *See Mata*, 427 F.3d at 753. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id*. Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." *Sealock*, 218 F.3d at 1210.

*Id*. at 1292.

19

Nurse Roth, presumably focused on Plaintiff's low oxygen saturation, ordered a nebulizer treatment to improve his breathing. When it became apparent that the nebulizer was ineffective, she ordered him transported to the hospital instead of allowing any further delay for a COVID test. "[N]ot every twinge of pain suffered as a result of delay in medical care is actionable." *Kikumura v. Osagie*, 461 F.3d at 1292 (citing *Mata v. Saiz*, 427 F.3d at 753). Plaintiff does not allege that he endured substantial harm which could have been avoided if Nurse Roth by an immediate COVID test instead of the nebulizer. Therefore, Plaintiff fails to set forth facts necessary to establish the objective element of a claim for deliberate indifference against Nurse Roth.

Plaintiff likewise fails to allege facts sufficient to meet the subjective component. The Complaint suggests Nurse Roth never personally evaluated Plaintiff. ECF No. 23-2, at 21 ("[Nurse Stacey] telephoned Nurse practitioner Chelsea Roth on what treatment to administer."). The Complaint neglects to identify what symptoms Nurse Roth was provided to make her recommendations, but notes that he was experiencing fever and 84 percent oxygen saturation. The treatment recommended by Nurse Roth was not "patently unreasonable." *See Self v. Crum*, 439 F.3d at 1232–33 (a "jury may infer conscious disregard" when a prison doctor "responds to an obvious risk with treatment that is patently unreasonable.").

Nurse Roth recommended treatment consistent with Plaintiff's low oxygen saturation, which Nurse Roth might have reasonably concluded was the most urgent consideration.[3] Even if Plaintiff had alleged that he was harmed by Nurse Roth's failure to order a COVID test, and that perhaps fifteen minutes was an unreasonable delay prior to summoning an ambulance, Plaintiff offers no facts to support the inference that Nurse Roth subjectively understood and disregarded

---

[3] Plaintiff alleges that oxygen saturation below 89 percent triggers an alarm in the hospital. ECF No. 23-2, at 15.

a serious medical risk. Plaintiff's allegations pertaining to Nurse Roth fall far short of the standard for deliberate indifference to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court precedent] be condemned as the infliction of punishment.").

Plaintiff fails to allege sufficient facts to meet either component of a claim of deliberate indifference to serious medical needs against Nurse Roth. Plaintiff's claims against Nurse Roth must be dismissed.

## CONCLUSION

Petitioner fails to allege facts to support a constitutional claim against any Defendant. Plaintiff's Equal Protection claim misinterprets relevant standards. Plaintiff lacks standing to assert claims based on other inmates being exposed to COVID-19 due to Defendants' allegedly negligent treatment of Plaintiff's infection. Section 1983 does not support supervisor liability against Dr. Campbell absent an affirmative link to his actions, which Plaintiff has not pled. Although Nurse Stacey may have negligently diagnosed Plaintiff's COVID-19 symptoms as a COPD exacerbation, Plaintiff's allegations fall short of the standards the Tenth Circuit has set for deliberate indifference. Nor has Plaintiff set forth facts to support a claim against Nurse Roth. Plaintiff has failed to set forth a viable claim against any Defendant.

///

**IT IS THEREFORE ORDERED** that the Complaint (ECF No. 23-2) is **DISMISSED WITHOUT PREJUDICE**.

This action is **CLOSED**.


DATED this 15th of September, 2025.

BY THE COURT


_____

JUDGE TED STEWART
United States District Court